1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SCOTT JOHNSON,                          No.  2:14-cv-2838 WBS AC (PS)

12                 Plaintiff,

13        v.                                 FINDINGS AND RECOMMENDATIONS

14   CHARAN SINGH DHILLON, and
     SUKHWINDER SINGH,
15
                   Defendants.
16

17        Plaintiff Scott Johnson, is disabled.[1]  He went to Quick Stop Market in Stockton to go

18   shopping.  The store has parking spaces, but no proper accessible parking space, the door handle

19   at the entrance requires tight grasping or twisting of the wrist to operate and there is no lowered

20   transaction counter for use by persons in wheelchairs.[2]  Plaintiff actually encountered these

21   "barriers" on two separate trips, and has been discouraged from returning because of the barriers.

22   Defendants Charan Singh Dhillon and Sukhwinder Singh are, or were at the time of the incidents,

23   _____

24   [1]  These facts are taken from the Complaint (ECF No. 1).  "The general rule of law is that upon
     default the factual allegations of the complaint, except those relating to the amount of damages,
25   will be taken as true."  Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (per
     curiam).
26   [2]  The complaint also mentions a "cramped" sales counter.  Complaint ¶ 10.  However, it is not
     specifically addressed in the motion for default judgment, and in addition, it is not clear that it is a
27   violation of the ADA.  See Chapman v. Pier 1 Imports (U.S.) Inc., 779 F.3d 1001, 1009 (9th
     Cir. 2015) (clutter on counter created "at most, 'temporary or isolated interruptions in ...
28   access'").  Accordingly, the court will not address that issue.

                                          1

1  the real property owners, business operators, lessors and/or lessees of the Quick Stop Market.

2  ## I.  PROCEDURAL BACKGROUND

3  Plaintiff filed his complaint against defendants, alleging that they violated: (1) the

4  Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12182(a), which makes it

5  unlawful for the operator of a place of public accommodation to discriminate against a person on

6  the basis of his disability; and (2) the Unruh Civil Rights Act, Cal. Civ. Code §§ 51(f), which

7  provides that an ADA violation is an Unruh Act violation.[3]  The court exercises subject matter

8  jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1367(a) (supplemental jurisdiction over

9  related state claims).

10  On April 22, 2015, plaintiff filed a proof of service on defendant Charan Singh Dhillon.

11  ECF No. 7.  On May 25, 2015, plaintiff filed a proof of service on defendant Sukhwinder Singh.

12  ECF No. 8.  On July 8 & 9, 2015, the Clerk entered defaults against both defendants.  ECF

13  Nos. 11 & 12.  On August 17, 2015, plaintiff filed this motion for default judgment.

14  Neither defendant has made an appearance in the case, indicated any intention of

15  defending the lawsuit, or responded to the motion for default judgment.

16  ## II.  LEGAL STANDARDS

17  A.  <u>Motion for Default Judgment</u>

18  It is within the sound discretion of the district court to grant or deny an application for

19  default judgment.  <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam).  The

20  complaint's well-pleaded factual allegations "are taken as admitted on a default judgment."

21  <u>Benny v. Pipes</u>, 799 F.2d 489, 495 (9th Cir. 1986), <u>as amended</u>, 807 F.2d 1514, <u>cert. denied</u>, 484

22  U.S. 870 (1987).  Those well-pleaded factual allegations must be sufficient to establish plaintiff's

23  entitlement to a judgment under the applicable law.  <u>See Alan Neuman Productions, Inc. v.</u>

24  <u>Albright</u>, 862 F.2d 1388 (9th Cir. 1988) (reversing default judgment on Racketeer Influenced and

25  Corrupt Organizations Act ("RICO") claim where "the complaint fails properly to allege a claim

26  for violation" of RICO), <u>cert. denied</u>, 493 U.S. 858 (1989); <u>Cripps v. Life Ins. Co. of North</u>

27

28
---
[3]  Plaintiff's complaint includes other state law claims, but they are not included in this motion, so they are not addressed.

America, 980 F.2d 1261, 1267 (9th Cir. 1992) ("claims which are legally insufficient, are not established by default").

Even when the defendant has appeared, answered (or late-answered) or otherwise made it clear that it intends to defend or negotiate, a default judgment may be sought and entered.  See Fed. R. Civ. P. 37(b)(2)(A)(vi) (default judgment as sanction for failure to comply with a court order), 55(b)(2) (default procedure where defaulting party has appeared in the action).  In those cases, the entry of a default judgment is governed by a set of factors that are dependent on the circumstances of the default.  See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (reciting seven factors to be considered, after defendant had been negotiating with plaintiff and then late-filed an answer to the complaint);[4] Adriana Intern. Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990) (reciting five factors for Rule 37 sanction of striking answer and entering default), cert. denied, 498 U.S. 1109 (1991);[5] Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990) ("[o]ur own court has fashioned a set of factors for the district court to apply in considering whether a . . . default is appropriate as a Rule 37 sanction").

Those circumstances are not present here.  However, even if the listed factors were applicable here, they would weigh in favor of a default judgment in a case such as this, where defendant has made no appearance, no attempt to negotiate or defend the lawsuit and no response

---

[4]  The seven factors are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

[5]  The five factors are:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.

Adriana, 913 F.2d at 1412.

1    to the motion for default judgment.

2        B.  The ADA

3        "The ADA 'provide[s] a clear and comprehensive national mandate for the elimination of

4    discrimination against individuals with disabilities.'"  Chapman v. Pier 1 Imports (U.S.) Inc., 779

5    F.3d 1001, 1005 (9th Cir. 2015) (quoting 42 U.S.C. § 12101(b)(1)).  Title III of the ADA

6    provides that "[n]o individual shall be discriminated against on the basis of disability in the full

7    and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations

8    of any place of public accommodation by any person who owns, leases (or leases to), or operates

9    a place of public accommodation."  42 U.S.C. § 12182(a).

> The general anti-discrimination prohibitions of Title III . . . are
> supplemented by various, specific prohibitions, including
> requirements that entities providing public accommodations must
> . . . "*remove architectural barriers . . . in existing facilities . . .
> where such removal is readily achievable.*"

13   Chapman, 779 F.3d at 1005 (emphasis added) (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)).

14   Discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . .

15   where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  Under the ADA, the

16   term "readily achievable" means "easily accomplishable and able to be carried out without much

17   difficulty or expense." 42 U.S.C. § 12181(9).

18       "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is

19   disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or

20   operates a place of public accommodation; and (3) the plaintiff was denied public

21   accommodations by the defendant because of her disability."  Molski v. M.J. Cable, Inc., 481

22   F.3d 724, 730 (9th Cir. 2007).  In this case, plaintiff alleges that the discrimination arose from

23   defendants' failure to remove architectural barriers.  Complaint ¶¶ 7-14; Motion for Default

24   Judgment ("Motion") (ECF No. 14-1) ¶ III(A)(3).

25       C.  The Unruh Act

26       The California Unruh Act provides that a "violation of the right of any individual under

27   the federal Americans with Disabilities Act of 1990 shall also constitute a violation of this

28   section."  Cal. Civ. Code § 51(f) (citation and footnote omitted).  In turn, Cal. Civ. Code § 52(a)

1  provides that any person who violates Section 51(f) is liable for $4,000 in statutory damages "for

2  each and every offense," plus attorney's fees.

3                                    III.  ANALYSIS

4       A.  The ADA

5       Plaintiff has made out a prima facie Title III ADA discrimination claim, accepting the

6  allegations of the complaint as true.  Here, plaintiff alleges (1) that he is disabled, (2) that

7  defendants' business is a place of public accommodation, and (3) that plaintiff was denied access

8  to defendants' business because defendants failed to remove the architectural barriers listed

9  above, namely, lack of accessible parking space, an inaccessible entry door and an absent

10  handicap counter.

11       It appears that at a minimum, there is a presumption that the removal of those barriers,

12  which are listed in 28 C.F.R. § 36.304(b), is "readily achievable."  Molski, 481 F.3d at 730

13  ("[f]ederal regulations clarify which barrier removals are likely to be readily achievable and

14  provide examples in 28 C.F.R. § 36.304").  They include "[r]epositioning shelves," "[i]nstalling

15  accessible door hardware," and "creating designated accessible parking spaces,"  28 C.F.R.

16  § 36.304(b)(3), (11), (18); see Johnson v. Wayside Property, Inc., 41 F. Supp. 3d 973, 977 (E.D.

17  Cal. 2014) (Shubb, J.) ("[t]he Department of Justice has promulgated a regulation in which it lists

18  removal of all three barriers – inadequate handicapped parking, unlawful door hardware, and an

19  excessively high transaction counter – as 'examples of steps to remove barriers.'") (citing 28

20  C.F.R. §§ 36.304(b)(3), (11), (18)).  "The Department of Justice has referred to these examples as

21  'the types of modest measures that may be taken to remove barriers and that are likely to be

22  readily achievable.'  Appendix B to Part 36 – Preamble to Regulation on Nondiscrimination on

23  the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg.

24  35,546 (July 26, 1991); see also 28 C.F.R. § 36 App. A."  Molski, 481 F.3d at 730.

25       Since defendants provide at least one parking spot, they must provide at least one

26  accessible parking spot, according to the ADA Standards for Accessible Design ("ADAAG"),

27  ////

28  ////

5

§ 4.1.2(5).[6]  Door handles must be "operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist."  ADAAG § 4.13.9.  A portion of the sales counter must be no more than 36 inches above the floor.  ADAAG § 7.2(1).

Plaintiff alleges that defendant's facility violates each of these standards.  Accordingly, defendants are in violation of the ADA.

B.  California's Unruh Civil Rights Act

Because plaintiff has shown that defendants are in violation of the ADA claim, he has also shown that defendants are in violation of the Unruh Civil Rights Act.  Lentini v. California Center for the Arts, Escondido, 370 F.3d 837, 847 (9th Cir. 2004) ("a violation of the ADA is, per se, a violation of the Unruh Act").

C.  Damages, Attorneys' Fees and Costs

The Unruh Civil Rights Act provides for a minimum statutory damage amount of $4,000 per violation, and "any attorney's fees that may be determined by the court in addition thereto."  Cal. Civ. Code § 52(a).  Plaintiff is entitled to recover statutory damages for, at a minimum, each time he visited the business and was discriminated against.  Cal. Civ. Code § 52(a) (statutory damages available for "each and every offense"); see Feezor v. Del Taco, Inc., 431 F. Supp. 2d 1088, 1090-91 (S.D. Cal. 2005) (finding plaintiff entitled to statutory damages "for each time he patronized the Restaurant").

Plaintiff's motion seeks a statutory damages award in the amount of $8,000 for violation of the Unruh Civil Rights Act, which includes two instances of visiting defendants' business, once in August 2014 and once in September 2014.  ECF No. 14-5 ¶ 3.  The undersigned will therefore recommend that plaintiff be awarded the minimum $8,000 in statutory damages.

Plaintiff also requests attorney's fees under Title III of the ADA and the Unruh Civil Rights Act.  ECF No. 14-4.  Attorney's fee awards are calculated using the "lodestar" method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate.

---

[6]  Available at ada.gov/2010ADAstandards_index.htm.  "[T]he ADA Accessibility Guidelines . . . lay out the technical structural requirements of places of public accommodation."  Chapman, 779 F.3d 1001 at 1006 (internal quotation marks omitted).

1    Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (per curiam).  The

2    hourly rate is generally calculated "according to the prevailing market rates in the relevant legal

3    community."  Blum v. Stenson, 465 U.S. 886, 895 (1984).  It is also the general rule that the court

4    will use the rates of attorneys practicing in the forum district.  Gates v. Deukmejian, 987 F.2d

5    1392, 1405 (9th Cir. 1993).

6         Plaintiff requests attorney fees at an hourly rate of $425 for 9.2 hours of work, plus $440

7    in filing fees and service costs, totaling $4,350.  ECF No. 14-4 ¶¶ 5 & 6.  Plaintiff claims that this

8    is a fair rate for attorneys with similar experience in the area of disability law, but does not

9    address the prevailing market rates in the forum district.  Id.  The undersigned finds that the

10   prevailing rate is $250 per hour for the Sacramento division of the Eastern District of California

11   for similar services by lawyers of reasonably comparable skill, experience, and reputation.  See

12   Loskot v. D & K Spirits, LLC, 2011 WL 567364 at *5 (E.D. Cal. 2011) (Drozd, M.J.) (citing

13   Eastern District ADA cases resolved on default judgment where $250 was determined to be the

14   reasonable rate).[7]  Accordingly, the undersigned will recommend that plaintiff be awarded $2,740

15   in attorney fees and costs, based on an hourly rate of $250 for 9.2 hours, along with $440 in filing

16   fees and costs.

17                              IV.  CONCLUSION

18        For the reasons stated above, IT IS HEREBY RECOMMENDED that:

19        1.  Plaintiff's motion for default judgment (ECF No. 14) on plaintiff's ADA claim and

20   Unruh Civil Rights Act, be granted;

21        2.  Plaintiff be awarded statutory damages in the amount of $8,000;

22        3.  Plaintiff be awarded $2,300 in attorneys' fees, plus $440 in fees and costs; and

23   ////

24   ////

25   _____

26   [7]  Plaintiff has provided information about hourly rates awarded in the Central and Southern
     Districts of California, and a Los Angeles County state court, but nothing from the Eastern

27   District of California, which is the forum district.  In addition, none of the cases relied upon by
     plaintiff addressed attorney fees in the context of a default judgment (although one was for

28   collection efforts after default judgment).

4. Plaintiff be granted an injunction requiring defendant to provide the correct number and type of properly configured disabled parking space(s), an accessible entrance door and an accessible transaction counter, all in accordance with the ADA and the ADAAG.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 1, 2015

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE